UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BOBBI L. HOLZBERG,

        Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

CASE NO. C09-5029BHS-KLS

REPORT AND RECOMMENDATION

Noted for December 18, 2009

Plaintiff, Bobbi L. Holzberg, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 48 years old.[1] Tr. 34. She has two years of college education and past work experience as a medical assistant, nursing assistant, baker and checker. Tr. 30, 94, 120, 128, 639.

On November 18, 2004, plaintiff filed applications for disability insurance and SSI benefits,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

alleging disability as of June 15, 2004, due to fibromyalgia, carpal tunnel, supraventricular arrhythmia, high chloresterol, irritable bowel, and high blood pressure. Tr. 22, 74-76, 93, 563. Her applications were denied initially and on reconsideration. Tr. 22, 34-35, 62, 65, 68, 554, 557-58, 562. A hearing was held before an administrative law judge ("ALJ") on October 23, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 634-71.

On December 11, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of obesity, fibromyalgia, post traumatic stress disorder ("PTSD"), and diabetes;

(3) at step three, plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4) after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain additional non-exertional limitations;

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 22-32. Plaintiff's request for review was denied by the Appeals Council on December 3, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 3; 20 C.F.R. § 404.981, § 416.1481.

On January 20, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed with the Court on April 13, 2009. (Dkt. #14). Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in not finding plaintiff's depression to be a severe impairment;

(c) the ALJ erred in assessing plaintiff's credibility;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(d) the ALJ erred in evaluating the lay witness evidence in the record;

(e) the ALJ erred in assessing plaintiff's residual functional capacity; and

(f) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

1  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
2  thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the
3  evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences
4  from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.  Dr. Lewy

In mid-July 2005, Arthur Lewy, Ph.D., completed a psychiatric review technique form in which he diagnosed plaintiff with mild to moderate major depression, chronic provisional PTSD, and a provisional personality disorder. Tr. 529, 531, 533.  In terms of the "B" criteria of Listings 12.04, 12.06 and 12.08,[3]

---

[3] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments set forth in the Listings. 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of a claimant's impairments meets or medically equals a Listing, the claimant is deemed disabled. Id.  With respect to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A states as follows: "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing,

Dr. Lewy found these mental impairments resulted in a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. Tr. 536. Dr. Lewy also found that the evidence in the record did not establish the presence of the "C" criteria for Listing 12.04. Tr. 537.

At step three of the sequential disability evaluation process, the ALJ determined in relevant part as follows:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, or 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. She is able to live on her own, take are of her own chores, do her own shopping, and care for her own personal hygiene.
>
> In social functioning, the claimant has mild difficulties. She is noted to be irritable, but she reports that she has a sustained friendship and she is able to deal with her doctors and others that she interacts with without any notable problems.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Her pain and depressive symptoms cause her to be unable to sustain prolonged concentration, but she is able to do simple tasks as illustrated by her ability to care for another person until 2006 and her ability to do serial three subtractions.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation. She has never been hospitalized for a mental impairment and she has not had to have increased care due to a decompensation.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. The C criteria are not met as the claimant is able to function outside a highly supportive environment.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity

---

paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."

> assessment used at steps 4 and 5 of the sequential evaluation process requires a more
> detailed assessment by itemizing various functions contained in the broad categories
> found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of
> Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B"
> criteria findings into work-related functions in the residual functional capacity
> assessment below.

Tr. 27-28; see also Tr. 536-37; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08. Plaintiff argues the ALJ erred by providing only a very cursory discussion of Dr. Lewy's "B" criteria findings, and by not adopting the "B" criteria findings regarding moderate difficulties in concentration, persistence or pace. The undersigned finds no error here, however, as plaintiff fails to state what additional discussion she feels was required by the ALJ at this step of the sequential disability evaluation process. Indeed, as noted by the ALJ, a marked degree of limitation is required to establish listing-level criteria, and thus even if the ALJ's discussion of Dr. Lewy's findings was somehow deficient, any such error was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

On the other hand, the undersigned does agree with plaintiff that the ALJ erred in his treatment of the findings contained in the mental physical functional capacity assessment form Dr. Lewy completed at the same time. In that form, Dr. Lewy more specifically found – based on the same mental impairments – that plaintiff was moderately limited in her ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Tr. 549-50. Dr. Lewy also stated the "evidence" supported a finding that plaintiff's mental impairments were "severe", that those impairments resulted "in moderate social and [concentration, persistence or pace] limitations" and that plaintiff "would do best with routine, simpler work and a moderate amount of contact with the public." Tr. 540.

The ALJ in this case assessed plaintiff with the following mental residual functional capacity:

> . . . [H]er mental impairments limit her so that she is limited to understanding,
> remembering and carrying out simple instructions compatible with unskilled work. She
> has the mental capability to adequately perform the mental activities generally required
> by competitive, remunerative, unskilled work. She has an average ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing basis
> within customary tolerances of employers rules regarding sick leave and absence. She
> could make judgments commensurate with the functions of unskilled work so that she
> could make simple, work-related decisions; respond appropriately to supervision, co-
> workers and work situations; and deal with changes all within a routine work setting.

Tr. 28. Plaintiff argues that although the ALJ found, as noted above, that she had "moderate difficulties" in regard to concentration, persistence or pace, and that "[h]er pain and depressive symptoms cause her to be unable to sustain prolonged concentration" (id.), he did not include in the above assessment several of the more specific moderate functional limitations Dr. Lewy marked in the mental residual functional capacity assessment form he completed. The undersigned agrees.

Clearly, the ALJ's stated restriction to simple, unskilled work and to simple work-related decisions covers the moderate limitations on the ability to understand, remember and carry out detailed instructions found by Dr. Lewy. It is not clear, however, that the ALJ's restriction here properly takes account of Dr. Lewy's moderate limitation in maintaining concentration and attention for extended periods, given that this limitation forms a separate category from the limitations regarding detailed instructions. See Tr. 549. As the ALJ gave no reason as to why he did not adopt this moderate limitation, he erred. In addition, the ALJ did not discuss, nor again provide any explanation as to why he did not adopt, Dr. Lewy's other moderate limitations concerning accepting instructions, responding appropriately to criticism from supervisors and to changes in the work setting and setting realistic goals or making plans independently of others. The ALJ, therefore, erred in failing to do so with respect thereto as well. Defendant argues the ALJ's assessment did adequately account for these limitations, but merely recites the work-related restrictions the ALJ found, and thus has not shown how such is the case.

B.  Dr. Cosgrove

In early June 2005, plaintiff underwent an examination performed by Lisa Cosgrove, D.O., who diagnosed her with the following impairments: provisional, mild to moderate depressed type PTSD; mild to moderate chronic, recurrent major depression without psychosis; a pain disorder with both medical and psychological features; and a provisional personality disorder. Tr. 444. She also assessed plaintiff with a global assessment of functioning ("GAF") score of 48 to 50. Id. Dr. Cosgrove found her prognosis to be "[g]uarded to fair," further commenting as follows:

> . . . Provided that the claimant could be referred to a psychiatrist for continued medication management, evaluation, and psychotherapy, improvement is likely to be seen in her psychiatric condition within the next 1-2 years. I do have concerns about the use in the claimant of the multiple pain medications she is on, i.e., narcotic dependence, and it is somewhat suspicious to me, I therefore would strongly recommend that the claimant first be referred for possible medical disability, and second, be referred to a chronic pain management program. Her narcotics could also be causing instability in her depressive symptoms, as well as her trauma symptoms. With

>    these recommendations in place, improvement could likely be seen within 1-2 years. It should also be considered that this claimant has lived with chronic pain and worked during that time until only recently.

Tr. 444-45. In regard to ability to function, Dr. Cosgrove went on to opine:

>    . . . It would be wise, and in fact, prudent to have the claimant evaluated by a psychiatrist in the community, and a therapeutic alliance begun to monitor her psychiatric condition, medications, and chronic pain more closely before attempting employment again. In addition, I again would strongly recommend referral to a pain management program, and completion of that program before she tries gainful employment. Given that the claimant has limited insight into this, it is likely that she may <u>unconsciously</u> sabotage any efforts in employment. At this time, it would seem likely that because of the medications she presently takes, and her present psychiatric state that she would have difficulty maintaining concentration, persistence, and pace in the work environment. In addition, what would also be very apparent is that edge of irritability in her affect that is most likely due to her depression and fears of being re-traumatized that an employer, such as a supervisor or coworker, and it could easily [sic] misconstrued as anger or her not being a "people person," for which this claimant, in what she expressed to me today, very much is. Again, with treatment by a psychiatrist and going through a pain management program, improvement could likely be seen within 1-2 years, and I would recommend reevaluation at that time.

Tr. 445 (emphasis in original).

Plaintiff argues the ALJ erred by ignoring or overlooking Dr. Cosgrove's opined prognosis and assessed GAF score. Again, the undersigned agrees. While the ALJ summarized Dr. Cosgrove's findings and opinion, he did not state what weight, if any, he was giving to them. See Tr. 25. Defendant argues the Court should ignore plaintiff's claim here, because she has offered no argument or analysis to support that claim. But little analysis is needed to see that Dr. Cosgrove's findings and opinion constitute significant probative evidence the ALJ was required to consider <u>and</u> give his interpretation thereof, which clearly the ALJ failed to do here. As such, defendant's argument is rejected, and the undersigned finds that the ALJ erred in not doing so.

  C. <u>Definition of the Term "Moderate"</u>

Plaintiff argues the ALJ erred by failing to understand the term "moderate" as defined in the state agency psychological/psychiatric evaluation form completed by her mental health counselor, Kimberly Cole, M.A., in early April 2006. See Tr. 327-30. As used in that form, "moderate" means "[s]ignificant interference with basic work-related activities." Tr. 327. But plaintiff provides no valid reasons as to why the ALJ was required to adopt this definition in evaluating the medical and other evidence in the record as a whole. Indeed, it is not at all clear that he should have done so. In neither of the forms completed by Dr. Lewy, for example, is the term "moderate" so defined, or defined at all for that matter. See Tr. 536, 540,

REPORT AND RECOMMENDATION
Page - 8

549-51. The undersigned thus finds it was well within the ALJ's authority to determine how he should treat the term moderate, although admittedly he would be constrained by the above definition in analyzing the findings and opinions set forth in the state agency forms in which it is used.

Nor has plaintiff shown – even when constrained by the state agency form definition of the term "moderate" – that the ALJ has not abided thereby in this case. This is because that form merely defines "moderate" to mean a "significant" interference in basic work-related activities. But this essentially means only that the particular impairment-related limitation to which it applies has more than a *de minimis* impact on the individual's ability to perform such activities, that is that it is "severe".[4] The ALJ, furthermore, did demonstrate a proper understanding of that definition, since, as noted above, he included significant mental limitations in the residual functional capacity assessment he gave plaintiff. As plaintiff has not raised any issue as to that application, there is no error here. Even if the definition of the term "moderate" asserted by plaintiff should have been explicitly adopted by the ALJ, therefore, plaintiff has shown no error on the part of the ALJ in improperly applying it to this case.

D.  Dr. Siler

In early October 2005, plaintiff's treating physician, Thomas Siler, M.D., in answer to a question posed to him by plaintiff's attorney, stated that he thought her pain was "worsened by untreated psychiatric illness." Tr. 396. In a state agency physical evaluation form Dr. Siler completed at the same time, he again commented that plaintiff's "[c]hronic pain" was "worsened by" anxiety and depression. Tr. 400. In another such form he completed in early June 2006, however, Dr. Siler did not include any such comment. See Tr. 390-93. Nor did Dr. Siler so comment in yet another physical evaluation form he completed in late February 2007. See Tr. 221-24. While plaintiff argues the ALJ erred in factoring into his assessment of plaintiff's residual functional capacity Dr. Siler's two earlier opinions regarding worsening of pain due to her mental impairments, as just noted the most recent opinions he gave did not so opine, and thus strongly indicate he no longer believed this to be the case. Accordingly, the ALJ did not err in failing to adopt the particular limitation advocated by plaintiff here.

---

[4] An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

1  II.     The ALJ's Step Two Determination

2       At step two of the sequential disability evaluation process, the ALJ must determine if an

3  impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. Id. An impairment is "not severe" if it does not

4  "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §

5  404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); SSR 96-3p, 1996 WL 374181 *1. Basic work activities

6  are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR

7  85- 28, 1985 WL 56856 *3.

8       An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

9  than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen,

10 80 F.3d at 1290; Yuckert, 841 F.2d at 306. Plaintiff has the burden of proving that her "impairments or

11 their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152,

12 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry

13 described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen,

14 80 F.3d at 1290.

15      As noted above, the ALJ determined plaintiff to have severe impairments consisting of obesity,

16 fibromyalgia, PTSD and diabetes. Tr. 25. Plaintiff argues the ALJ erred in not determining she had severe

17 depression as well. The undersigned agrees. The record contains ample objective medical evidence of

18 more than *de minimis* mental functional limitations stemming at least in part from plaintiff's depression.

19 See Tr. 197 (GAF score of 58 to 60)[5], 207 (GAF score of 55), 211 (GAF score of 50)[6], 311 (GAF score of

20 60), 315 (same), 324 (GAF score of 55), 325 (GAF score of 60), 328-29 (moderate limitations in social

21 and cognitive areas of functioning), 332 (GAF score of 55), 333 (GAF score of 60), 335 (same), 337

22 (same), 339 (same), 341 (same), 345 (same), 347 (GAF score of 55), 349 (same), 444-45 (GAF score of

---

24     [5] See Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) ("A GAF of 51-60 indicates '[m]oderate symptoms
25 (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-workers).'") (quoting American Psychiatric Association, *Diagnostic and
Statistical Manual of Mental Disorders* at 34).
26
       [6] See Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) ("GAF score of 41-50 indicates '[s]erious symptoms
27 . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job.") (quoting Diagnostic
and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); England v. Astrue, 490 F.3d 1017,
28 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily
life).

1 48-50 and likelihood of difficulty engaging in or maintaining employment without treatment)[7]; 529, 536
2 (moderate limitations in social functioning and concentration, persistence or pace), 549-51 (moderate
3 limitations in several mental functional areas). These limitations clearly would affect plaintiff's ability to
4 do basic work activities. The ALJ thus erred in failing to conclude that plaintiff's depression was severe.

5 Defendant argues the ALJ's failure to explicitly list depression as a severe impairment at step two
6 appears to be "a scrivener's error," since he consistently referred to plaintiff's depression throughout his
7 decision. (Dkt. #16, p. 9). It is true that the ALJ did address at least some of the medical evidence in the
8 record wherein that condition was diagnosed (see Tr. 25-26), and that the ALJ noted at step three of the
9 sequential disability evaluation process that plaintiff's "pain and depressive symptoms" caused "her to be
10 unable to sustain prolonged concentration" (Tr. 28). The ALJ, however, did not discuss any of this
11 evidence in assessing plaintiff's residual functional capacity (see Tr. 28-30), so it is not entirely clear –
12 even if he did consider it to be a severe impairment – that the ALJ took that severity into consideration at
13 that stage of the disability evaluation process. Accordingly, the undersigned finds the ALJ's error in not
14 expressly finding plaintiff's depression to be severe was not harmless.

15 III.   The ALJ's Assessment of Plaintiff's Credibility

16 Questions of credibility are solely within the control of the ALJ. Sample, 694 F.2d at 642. The
17 Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the
18 Court may not reverse a credibility determination where that determination is based on contradictory or
19 ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should
20 properly be discounted does not render the ALJ's determination invalid, as long as that determination is
21 supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

22 To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for
23 the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not
24 credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915,
25 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for
26 rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as

---

[7] See Pisciotta, 500 F.3d at 1076 n.1; see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Here, the ALJ found plaintiff's testimony to be "consistent with the medical record except that it" seemed "to exaggerate the problems apparent by the record." Tr. 29. Specifically, the ALJ noted that while plaintiff reported needing "to rest regularly," her impairments were "long lasting" and "consistent with what she was experiencing when she was working and when she was caring for an elderly client." Id. This is a valid reason for discounting plaintiff's credibility, given that, at noted by the ALJ, plaintiff apparently was able to work and care for another during times when she was experiencing the same or substantially similar symptoms she now claims are disabling. See Tr. 208, 311, 315, 333, 335, 347, 461, 494, 513, 516-17; Smolen, 80 F.3d at 1284 (ALJ may consider claimant's work record).

Plaintiff argues she testified at the hearing that she was not in fact a caregiver for the elderly client the ALJ stated she cared for, but that testimony, as noted above, is inconsistent with what the record shows she reported to her mental health provider, Dr. Brownlee. See Tr. 208, 311, 315, 333, 335, 347; Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements). Indeed, plaintiff told Dr. Brownlee in late February 2006, that she was "hired . . . to care for [her] elderly roommate (Tr. 333), in late March, 2006, that "the elderly woman she" lived with and was "caretaker for" would "die" if she was "not there to take care of her" (Tr. 335 (quoting plaintiff)), and in mid-May 2006, that "the feelings of responsibility to the elderly woman she" cared for prevented her "from moving out" (Tr. 315). Accordingly, the ALJ did not err in discounting plaintiff's credibility for this reason.

The ALJ next discounted plaintiff's credibility on the basis that while plaintiff stated her pain had worsened, there was "no medical basis for an increase in her pain complaints." Tr. 29-30. Plaintiff does not challenge this stated basis for finding her less than fully credible, which the ALJ properly relied on to do so. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with objective medical evidence can satisfy clear and convincing

1  requirement). The medical evidence in the record, furthermore, shows plaintiff experienced improvement
2  for the most part in her pain in response to pain medications and other medical treatment. See, e.g., 218,
3  238, 456, 460, 463, 494, 501, 513, 516-18.

4  The ALJ further discounted plaintiff's credibility because she had "lost about fifty pounds since her
5  alleged onset date," which "would reasonably be expected to reduce her pain complaints and improve her
6  energy." Tr. 30. Plaintiff argues this is not a valid stated basis for discounting her credibility because "she
7  still weighed close to 300 pounds and would have met Listing 9.09 if it had not been deleted." (Dkt. #15,
8  p. 19). But the fact that the Listing plaintiff refers to was deleted would indicate that weight at that level
9  does not alone establish the presence of disability. Indeed, plaintiff has pointed to no evidence in the
10  record that her weight by itself significantly impacted her ability to work. On the other hand, the medical
11  evidence in the record gives no indication that plaintiff's weight loss resulted in an actual reduction of her
12  pain and/or improvement in her condition. Accordingly, the undersigned finds the ALJ erred here, as he
13  had no actual basis for so finding other than his "own expertise." Whitney v. Schweiker, 695 F.2d 784, 788
14  (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without
15  supporting medical expert testimony).

16  Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> . . . She was able to engage in work activity after her amended onset date, performing
> the tasks of a caregiver until the client passed away in June of 2006. She is able to
> travel to California every year despite her reported disabling pain and she is able to do
> all her necessary household tasks.
>
> . . .
>
> . . . The claimant is able to take care of her activities of daily living, do her own
> shopping and sustaining [sic] attention to watch television, crochet and do her
> household cooking and cleaning.

Tr. 30. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or
her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to
spend a substantial part of his or her day performing household chores or other activities that are
transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be
eligible for disability benefits, however, and "many home activities may not be easily transferable to a
work environment." Id.

Plaintiff argues the ALJ erred by ignoring or overlooking the intermittent nature of her activities of

1  daily living, and the fact that she could not do them on a sustained basis. The undersigned, though, finds
2  no error here. First, as discussed above and noted by the ALJ, the record shows plaintiff continued to both
3  work and take care of an elderly client after her alleged onset date of disability. This clearly demonstrates
4  an ability to perform work-related activities, and on a sustained basis, during at least part of the period she
5  claims to have been disabled. There is evidence in the record, furthermore, indicating an ability on the part
6  of plaintiff to perform household chores and other daily activities on a more consistent and sustained basis
7  than is being claimed here. See Tr. 111-14, 440, 444. This evidence, in combination with that concerning
8  her post onset date of disability work-related activities, supports the ALJ's findings here.

9  The ALJ's reliance on plaintiff's yearly trips to California, however, was not a legitimate reason
10 for discounting her credibility, as there is no indication in the record as to what plaintiff did on those trips
11 with respect to particular activities. Nevertheless, the fact that two of the reasons for discounting
12 plaintiff's credibility were improper, does not render the ALJ's credibility determination invalid, as long as
13 that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242
14 F.3d at 1148. Accordingly, the ALJ properly found plaintiff to be not fully credible.

15 IV.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

16 Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into
17 account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to
18 each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony,
19 the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the
20 testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and
21 substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically
22 flowing from the evidence." Sample, 694 F.2d at 642.

23 Plaintiff argues the ALJ erred in not evaluating the lay witness statement provided by her daughter,
24 which, plaintiff asserts, corroborates her testimony and the medical evidence of record. Defendant argues
25 any error here on the part of the ALJ was harmless, because in that statement plaintiff's daughter reported,
26 among other things, that plaintiff was independent in her personal care, helped a woman in her house do
27 her daily activities, performed household tasks, and shopped for groceries, in light of which no reasonable
28 ALJ considering the statement would have reached a different disability determination. See Stout v.

1 Commissioner, Social Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in
2 a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot
3 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting
4 the testimony, could have reached a different disability determination.").

5       It is true that plaintiff's daughter reported in her lay witness statement that plaintiff was able to do a
6 fair amount in terms of daily and work-related activities. See Tr. 111-14. Indeed, plaintiff's daughter
7 stated plaintiff performed her household chores "compulsively". Tr. 113. These observations do tend to
8 support the ALJ's determinations regarding plaintiff's credibility and ability to perform work-related
9 activities. On the other hand, plaintiff's daughter also reported that plaintiff shopped "a little less because"
10 it was "painful" for her "to walk around too much." Tr. 115. She also reported that plaintiff could not
11 "move very much," that it is "hard for her to lift things or do difficult activities," and that it is "difficult to
12 be around her for a long period of time." Tr. 115-16, 118. The Court cannot say for certain, therefore, that
13 no reasonable ALJ would come to a different conclusion in light of this lay witness evidence. The ALJ
14 thus erred here.

15 V.     <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

16       If a disability determination "cannot be made on the basis of medical factors alone at step three of
17 the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations
18 and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996
19 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to
20 determine whether he or she can do his or her past relevant work, and at step five to determine whether he
21 or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

22       A claimant's residual functional capacity is the maximum amount of work the claimant is able to
23 perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work
24 must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only
25 those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a
26 claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional
27 limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other
28 evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the following residual functional capacity:

> . . . the claimant has the residual functional capacity to perform sedentary work except her mental impairments limit her so that she is limited to understanding, remembering and carrying out simple instructions compatible with unskilled work. She has the mental capability to adequately perform the mental activities generally required by competitive, remunerative, unskilled work. She has an average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers rules regarding sick leave and absence. She could make judgments commensurate with the functions of unskilled work so that she could make simple, work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes all within a routine work setting.

Tr. 28. Plaintiff argues the ALJ failed to include in the above assessment any functional limitations from the "B" criteria discussed above in regard to the ALJ's step three determination. But, as plaintiff herself admits, those "B" criteria findings are used at step three of the sequential disability evaluation process, and are not used for the purposes of assessing a claimant's RFC. The ALJ thus did not err in failing to include any functional limitations from those criteria.

Nor did the ALJ err in not including any limitations based on plaintiff's testimony or self-reports in light of his proper credibility analysis. On the other hand, as discussed above, the ALJ did err in evaluating the medical evidence in the record, in addressing the severity of plaintiff's depression and the impact it had on plaintiff's residual functional capacity and in evaluating the lay witness evidence in the record. Because of these errors, it is not entirely clear that the ALJ's assessment of plaintiff's residual functional capacity is accurate or includes all of plaintiff's functional limitations. The undersigned, therefore, finds that the ALJ erred here as well.

VI. The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

The vocational expert's testimony must be reliable in light of the medical evidence to qualify as

substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ's description of the claimant's disability thus "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a series of hypothetical questions to the vocational expert, which contained substantially the same functional limitations as were included in the assessment of plaintiff's residual functional capacity. Tr. 665-67. In response to those questions, the vocational expert testified that an individual with those limitations and the same age and education as plaintiff could perform other jobs in the national economy. See id. Based on the vocational expert's testimony, the ALJ found plaintiff capable of performing other jobs existing in significant numbers in the national economy, and thus not disabled at step five of the sequential disability evaluation process. Tr. 30-31.

Plaintiff argues that in light of the errors the ALJ made above in evaluating the medical and other evidence in the record, and in assessing her residual functional capacity, the vocational expert's testimony was based on incomplete hypothetical questions, and thus could not be relied upon by the ALJ in finding her to be not disabled at step five. The undersigned agrees, given, as discussed above, the ALJ's improper treatment of the medical evidence in the record, plaintiff's depression at step two, the lay witness evidence in the record, and plaintiff's residual functional capacity.

VII.    Evidence Submitted for the First Time to the Appeals Council

Plaintiff argues a state agency psychological/psychiatric evaluation form completed by another of her mental health counselors, Linda L. McNellis, M.S.W., she submitted for the first time to the Appeals Council supports reversal of the ALJ's decision. In that form, Ms. McNellis diagnosed plaintiff with a recurrent, moderate major depressive disorder. Tr. 591. Based on that impairment, Ms. McNellis opined that plaintiff had several moderate to marked mental functional limitations, commenting further that "[h]er depression and physical pain prevent[ed] her from functioning to the best of her ability in work and social situations," and that she would be so limited for a period of 12 to 18 months. Tr. 592-93.

Clearly, the ALJ did not err in failing to consider this evidence, as it was not before him when he issued his decision. Nevertheless, plaintiff wants the Court to consider it now in determining whether to reverse the ALJ's decision, and whether such reversal should be for an outright award of benefits or for

further administrative proceedings.  First, however, the Court must determine whether the Court properly may consider that evidence.  Defendant, relying on the Ninth Circuit's decision in <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001), argues that this evidence is cumulative and that plaintiff has failed to make the necessary showing of good cause required for reversal of this matter.

In <u>Mayes</u>, the Ninth Circuit applied the standard set forth in 42 U.S.C. § 405(g) to determine whether to remand that case in light of additional evidence submitted to the Appeals Council. <u>Id.</u> at 461-62.  Under that standard, to justify remand, the claimant must show that the additional evidence is both "new" and "material" to determining disability, and that he or she "had good cause for having failed to produce that evidence earlier." <u>Id.</u> at 462.

To be material under 42 U.S.C. § 405(g), "the new evidence must bear 'directly and substantially on the matter in dispute.'" <u>Id.</u> (citation omitted).  In addition, the claimant must demonstrate a "reasonable possibility" that the new evidence "would have changed the outcome of the administrative hearing." <u>Id.</u> (citation omitted).  To demonstrate "good cause," the claimant must show that the new evidence "was unavailable earlier." <u>Id.</u> at 463.  The good cause requirement will not be met by "merely obtaining a more favorable report once his or her claim has been denied." <u>Id.</u>

While the Ninth Circuit in <u>Mayes</u> expressly held it had not decided whether good cause is required to review evidence submitted for the first time to the Appeals Council, or whether good cause is required only when such evidence is submitted for the first time to district court, plaintiff has not argued that good cause is not required to be shown here. <u>See</u> <u>id.</u>, at 461 n.3.[8]  Accordingly, the good cause standard applied in <u>Mayes</u> shall be applied here as well.  First, the undersigned finds the additional evidence to be both new

---

[8]The Court of Appeals in <u>Mayes</u> expressly stated it had not decided whether good cause is required to review evidence for the first time to the Appeals Council:

> We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as [the claimant] conceded in her briefs that good cause was indeed required. In a petition for rehearing, which we deny, [the claimant] raises for the first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council to receive new evidence without regard to the issue of good cause. Citing *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir.1993), [the claimant] belatedly argues that good cause is required only when new evidence is submitted to a district court. Mayes <u>misapprehends *Ramirez*. Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, *id.* at 1451-52, Ramirez does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement.</u>

<u>Id.</u> at 461 n.3 (emphasis added).

and material, as it bears directly and substantially on the issue of plaintiff's capability of performing work-related mental functional tasks. Good cause, however, has not been shown, as plaintiff has not explained why this additional evidence could not have been obtained and submitted earlier. That evidence, therefore, is not properly before the Court and the undersigned will not consider it.

VIII. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical and lay witness evidence in the record, plaintiff's residual functional capacity and her ability to perform other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

Plaintiff argues the findings and opinions of Dr. Siler, Dr. Lewy and Ms. Cole should be credited as true by the Court. As discussed above, though, the ALJ did not err in evaluating the findings and opinions from Dr. Siler and Ms. Cole. Nor does the undersigned find that those from Dr. Lewy should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted) (emphasis added). However, Dr. Lewis is a non-examining physician. In addition, where the ALJ is not required to find the claimant disabled on crediting of evidence, this is an outstanding issue that must be resolved, and, therefore, the Smolen test will not be found to have been met. Bunnell v.

Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). As discussed above, such is the case here.

The undersigned also declines to credit as true the lay witness evidence in the record as requested by plaintiff. First, as discussed above, that evidence largely supports the ALJ's determination to discount plaintiff's credibility, as well as his assessment of plaintiff's residual functional capacity. To the extent that evidence does not provide such support, furthermore, it is only the case that improperly rejected lay witness evidence may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment).

As noted by the Ninth Circuit, however, district courts do have "some flexibility" in how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Further, the situation in this case is much different from that in Schneider, wherein the Commissioner failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976. For these reasons, it is not appropriate to credit as true the statement from plaintiff's daughter, particularly since it hardly indicates plaintiff is not capable of performing any work.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 18, 2009**, as noted in the caption.

DATED this 24th day of November, 2009.

Karen L. Strombom
United States Magistrate Judge